MARGARET A. MCLETCHIE, Nevada Bar No. 10931
DAYVID J. FIGLER, Nevada Bar No. 4264
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, Nevada 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL ROGERS, an individual; NIKITA WRIGHT, an individual, | Case. No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; JOSEPH LOMBARDO, in his official capacity as Sheriff; ALFREDO QUINTERO, individually; PRAVEEN RAJ, individually; DOE OFFICERS I - IV, individually, | **[JURY TRIAL DEMANDED]** |
| Defendants. | |

Plaintiffs Michael Rogers and Nikita Wright, by and through their counsel of record, hereby file this Complaint for damages and declaratory relief pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 2201 (creation of remedy), and hereby alleges and complains as follows:

### I.  NATURE OF THE ACTION

On May 31, 2020, Plaintiffs Michael Rogers and Nikita Wright were heading home with their 9-year-old son when they were unwittingly diverted from their usual route by road closures related to protests taking place on Las Vegas Boulevard against police brutality and the disproportionate mistreatment toward people of color. Metro was apparently

implementing these road closures according to its jurisdiction authority over traffic flow due to the nature of the protests. Metro's animosity toward Black individuals and Black Lives Matter supporters was palpable, as evidenced by the numerous complaints and ongoing lawsuits regarding the police department's actions during this season of protests. Notably, Plaintiffs are Black.

While caught in a traffic jam, officers directing traffic took note specifically of Plaintiffs' car and, without justification, targeted the vehicle and its occupants and descended upon them—without warning and with large numbers and force. This encroachment upon the vehicle occurred shortly after Mr. Rogers played a song through his car stereo that is critical of police. Either in retaliation or for other unjustified purposes, six officers seized Plaintiffs and their son from the car, in violation of their civil rights. Seatbelts still buckled and doors locked, officers ripped the family from their vehicle. Objectively, they posed no conceivable threat while in their closed and at least partially locked car that was driving away from the protest area. Further, officers did not make any effort to announce an offense or provide any warning to comply before aggressively approaching the car, extracting, and detaining Plaintiffs. Mr. Rogers was thereafter arrested and detained for over 12 hours on a baseless charge.

Plaintiffs are entitled to damages, costs, and attorney's fees, punitive damages, and any other relief as a victim of civil rights violations and of tort damages.

## II.  JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 *et seq.* for civil claims arising under the Constitution and laws of the United States. Pursuant to § 1331, this Court has original subject matter jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1983.

2.      The prayer for relief is predicated on 28 U.S.C. § 2201 and Fed. R. Civ. P. 38. This Court has jurisdiction to award Plaintiffs' damages pursuant to 42 U.S.C. § 1983. Authorization for the request of attorneys' fees and costs is conferred by 42 U.S.C. § 1988(b).

3.     The Defendants acted, purported to act, and/or pretended to act in the performance of their official duties, and thus each of the Defendants acted under color of law and are subject to liability as state actors pursuant to 42 U.S.C. § 1983. *See McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

4.     Because the individual Defendants are not arms of the State, this suit is not barred by the Eleventh Amendment to the U.S. Constitution. *See Eason v. Clark County School*, 303 F.3d 1137, 1147 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999).

5.     The acts or omissions giving rise to Plaintiffs' claims all occurred in Clark County, Nevada and all Defendants reside or operate in Clark County, Nevada. Thus, pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c), venue is proper in the United States District Court for the District of Nevada.

### III. PARTIES

6.     Plaintiff Michael Rogers ("Mr. Rogers") is a resident of Las Vegas, Nevada.

7.     Plaintiff Nikita Wright ("Ms. Wright") is a resident of Las Vegas, Nevada.

8.     Defendant Las Vegas Metropolitan Police Department ("Metro") is a law enforcement agency with jurisdiction over the unincorporated parts of Clark County in which the events at issue took place.

9.     Defendant Joseph Lombardo ("Sheriff Lombardo") is the Sheriff of Metro and was the Sheriff of Metro at all relevant times herein. Defendant Sheriff Lombardo and all Metro police officers are vested with the authority to enforce both Nevada statutory law and the Clark County Code. Defendant Sheriff Lombardo has final policymaking authority for Metro internal policies and is vested with supervisory authority over all Metro officers.

10.     On information and belief, Defendant Sheriff Lombardo has failed to implement policies safeguarding motorists' constitutional rights and has failed to adequately train his officers to avoid excessive force and protect motorists from being subjected to brutalization when attempting to comply with officers' commands.

11.     On information and belief, Defendant Sheriff Lombardo has failed to implement policies that prevent officers from disproportionately targeting and arresting Black individuals in retaliation for exercising their First Amendment rights.

12.     On information and belief, Defendant Alfredo Quintero ("Officer Quintero") was a Metro officer at all relevant times herein.

13.     On information and belief, Defendant Praveen Raj ("Officer Raj") was a Metro officer at all relevant times herein.

14.     Defendants Officer Does I – IV are individuals whose true identities are unknown to Plaintiffs and are therefore sued under fictitious names. On information and belief, these individuals were employed by and acting on the behalf of Metro at all relevant times herein.

15.     Defendants Officer Quintero, Officer Raj, and Officer Does I – IV may be collectively referred to herein as the "Defendant Officers."

16.     At all relevant times, Defendants were acting under color of law.

17.     The naming of defendants herein is based upon information and belief. Plaintiffs reserve the right to name additional defendants and modify their allegations concerning defendants named herein.

## IV.  STANDING

18.     Plaintiffs were directly affected by Defendants' practices and policies which violated their constitutional rights, as set forth more fully herein, and/or other abuses by Defendants operating under color of law as alleged herein.

19.     An actual case and controversy exist between Plaintiffs and Defendants concerning their respective rights, privileges, and obligations.

## V.  FACTUAL ALLEGATIONS

*The Unlawful Seizure*

20.     Around 11:20 P.M. on May 31, 2020, Plaintiffs were driving home with

their 9-year-old son Marsyas Rogers. Simultaneously, the streets were flooded with police officers responding to the third consecutive night of protests against police brutality, spurred by the murder of George Floyd by the Minneapolis Police just six days earlier.

21.     Plaintiffs were driving from the west side of town toward their home on the east side. They exited I-15 at Las Vegas Boulevard and Russell to take East Russell, but police were diverting traffic due to the protests and had blocked off Plaintiffs' typical route. These closures forced them to take an alternate route down Las Vegas Boulevard.

22.     Plaintiffs were not involved in the protests of the day and no intention of encroaching on the protest area.

23.     Plaintiffs were driving on Las Vegas Boulevard when they encountered a traffic jam near the median island between Tropicana Avenue and Park Avenue. Metro officers and SWAT teams had blocked off a portion of the road and were using it to detain peaceful protestors and bystanders.

24.     Plaintiffs were stuck in place for approximately two minutes while police directed traffic away from the scene of the demonstrations.

25.     While waiting in traffic, Plaintiffs witnessed police tackle a bystander on a skateboard for no apparent reason. Mr. Rogers decided to play a song that could be perceived as critical of police, as is his First Amendment right.

26.     Unprompted, amidst a cacophony of horns and sirens, one officer commanded the group to "Get them out…go, get 'em, get 'em!" Five officers then swarmed the vehicle and begin ripping Plaintiffs and their son from the car.

27.     There appeared to be no effort by law enforcement to offer Plaintiffs any preliminary warning of wrongdoing or an order to comply prior to harassing and extracting them.

***Ms. Wright is Harassed and Detained***

28.     Three officers rushed Ms. Wright's side of the car. They jiggled the door handles for a few moments in an attempt to extract her, but the vehicle was locked—

1   indicating that Plaintiffs had no intention of exiting the vehicle to threaten officers or

2   individuals, thus negating any claims that officers perceived Plaintiffs as dangerous.

3          29.    While officers attempted to break into the vehicle, Ms. Wright alerted them

4   that her son was in the car with them. After about six seconds, she was compelled to unlock

5   the door and allow officers to assault her family.

6          30.    Three officers then restrained her and escorted her away from the vehicle.

7   Ms. Wright again reiterated that her son was in the car while officers clasped her wrists with

8   zipties. An officer responded, "You should have thought of that," to which Ms. Wright said,

9   "I didn't even do anything." The officer did not dispute this statement nor offer a counter-

10  explanation as to why they were being targeted.

11         31.    Ms. Wright was separated from Marsyas while officers ziptied her and

12  forced her to sit on the pavement. there were a few moments where she could not see her son

13  because he was surrounded by officers; she could only hear him screaming and crying.

14         32.    After pleading with officers to leave Marsyas alone, they escorted him back

15  over to her. Marsyas sat on her lap while she remained handcuffed with her hands behind her

16  back. At the same time, more officers began to swarm Mr. Rogers.

17         33.    Some time later, officers cut Ms. Wright's zipties. An official in slacks and

18  a blazer who identified himself as James instructed her to "get in the car and leave, or else."

19         34.    She asked where Mr. Rogers was being taken but the officer did not offer

20  an explanation. Ms. Wright and Marsyas left without receiving a citation or an explanation

21  for the detention and/or abuse they just endured.

22
        *Mr. Rogers is Harassed and Detained*
23

24         35.    Two officers rushed to seize Mr. Rogers from the vehicle. The officers

25  pressed his back to the car so that he was facing the officers. One officer throttled his neck

26  while muscling him face down on the vehicle.

27         36.    Shocked, stunned, and confused, Mr. Rogers thrashed while being choked

28  before complying quietly before realizing the officers had seized his son.

37.     Leaning against the car with his hands behind his back, he turned to look over his shoulder and sees Marsyas. He then began to warn officers that his son was on the other side—the reflexive instinct of any parent in a dangerous situation.

38.     But instead of addressing these concerns, an officer with a taser pointed within a few inches of Mr. Roger's body, yelled, "Tase him" at least eleven times—all while Mr. Rogers was fully subdued and not resisting.

39.     The officer then screamed, "You've been [expletive] resisting forever," evidently providing future body camera footage viewers with a cover story to justify the use of force. Mr. Rogers responded, "Look where my hands are…I'm not resisting nothing." The video demonstrates that his hands were clasped behind his back while officers were actively putting zipties around his wrists.

40.     The officer then turned the taser off, continuing to press Mr. Roger's face into the car hood. Several seconds passed quietly before they escorted Mr. Rogers away.

41.     Body camera footage shows officers approaching and harassing a passenger who had stuck their body out of their car window in what appeared to be an attempt to advocate for Plaintiffs. On information and belief, officers continued to target civilians in the area indiscriminately and engage in retaliatory conduct against any individual with views, opinions or concerns the police perceived as contrary to their own views and opinions.

*Mr. Rogers is Arrested and Incarcerated*

42.     Mr. Rogers was made to sit on the ground outside, with hands ziptied, for nearly six hours before he was piled in a bus with 15-20 other individuals who had been arrested.

43.     This incident took place during the early days of the pandemic, and Metro's use of tear gas and pepper spray had forced most people to remove their masks. Additionally, other detainees were still wearing clothes with pepper spray and tear gas, so everyone was sniffling and coughing due to the irritants.

44.     Mr. Rogers was then moved from the bus to a van with about 10 other

people and taken to the jail for processing.

45.     Officers did not provide any of the detainees with masks until the second round of processing was complete, leaving Mr. Rogers and others without protection from COVID-19 for the majority of the 15 hours he was detained

46.     Mr. Rogers was eventually released on his own recognizance around 7 P.M. the next day. He called Ms. Wright to pick him up from the detention center.

47.     Mr. Rogers was supposed to return to court on August 3, 2020, but the District Attorney without explanation sought additional time to file the Complaint, leaving Mr. Rogers under threat of prosecution initiated by his arrest by LVMPD.

48.     His next court date was set for November 4, 2020, but the District Attorney's office announced it was not pursuing any charges against Mr. Rogers.

### Ms. Wright Attempts to Locate Mr. Rogers

49.     Mr. Rogers was incarcerated from around 11:20 P.M., when the unlawful seizure occurred, until 7 P.M. the next day.

50.     Meanwhile, Ms. Wright called Metro's Internal Affairs department directly after the incident, around 11:56 P.M., but was laughed at for trying to report the misconduct.

51.     Ms. Wright then began calling Metro and the jail to try to figure out what Mr. Rogers was charged with and when he would be released—but to no avail.

52.     While waiting for answers from Metro, Ms. Wright sent messages to Congresswoman Dina Titus and the NAACP, seeking to enlist their help in her search for answers.

53.     Around 10 A.M., Ms. Wright was finally notified that Mr. Rogers had been charged with "failure to disperse" and was being detained in custody at the direction of Metro.[1] As previously mentioned, Mr. Rogers was entirely uninvolved in the protest and would never have been subject to, or even aware of, any dispersal orders. Further, he was in

---

[1] Upon information and belief, Mr. Rogers was detained at the Clark County Detention Center.

his car in a logjam being directed and/or monitored by LVMPD and in the process of vacating the area when he was allegedly arrested for failing to disperse.

54.     Metro did not provide Ms. Wright with any other information regarding when Mr. Rogers would be released.

55.     Around 3 P.M. on June 1, 2020, Ms. Wright decided to take Marsyas to the doctor, as Marsyas had bruising and soreness on his chest from officers yanking him out of his seat while still wearing a seatbelt.

56.     Marsyas was cleared for any serious physical damage, but the social worker at the doctor's office recommended that he should start seeing a professional who specializes in trauma.

57.     In the aftermath, Ms. Wright filed several administrative complaints with the Internal Affairs department and the Citizen's Review Board, but her concerns were quickly dismissed and none resulted in the accountability they sought.

***Metro's History of Constitutional Violations***

58.     On information and belief, Metro has a history of deliberate indifference toward the rights of those in Las Vegas to be free of unreasonable searches, seizures and false arrests performed without probable cause; to be free from the use of excessive force; to be free from retaliation for engaging in protected speech; and to be free from discriminatory application of the laws based on race.

59.     In 2011, Metro entered into cooperative agreement number 2011-CK-WX-K002, pursuant to which the United States Department of Justice Office of Community Oriented Policing Services commissioned a report which suggested Metro make 80 different recommendations or reforms, many of which were related to use of force.[2]

60.     In 2012, a Metro officer resigned from the force after abusing his authority

---

[2] *See* https://cops.usdoj.gov/RIC/Publications/cops-p287-pub.pdf (last accessed May 31, 2022).

to pull over female motorists and coerce them into exposing their breasts.[3]

61.     In 2016, Metro settled a case for $200,000.00 in which a Metro officer used excessive force in detaining an unarmed woman whom he suspected—but had no probable cause to believe—was engaged in prostitution.[4]

62.     According to Metro's Office of Internal Oversight Use of Force Statistical Analysis 2012-2016, in 2016, Black subjects were overrepresented and white subjects were underrepresented in officer involved shootings in a way that was "not consistent with the racial demographics of Clark County, Nevada."[5]

## VI. CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES)
#### (AGAINST DEFENDANTS OFFICER QUINTERO, OFFICER RAJ, AND OFFICERS DOE I - IV)

63.     Plaintiffs repeat and re-allege Paragraphs 1 through 62 as though fully set forth herein.

64.     The Fourth Amendment to the United States Constitution, as applied to state governments through the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. (emphasis added).

65.     Defendants, acting under color of law, violated Plaintiffs' right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth

---

[3] *See* https://www.reviewjournal.com/crime/courts/las-vegas-officer-investigated-in-motorist-stops-resigns/ (last accessed May 31, 2022).

[4] *See* https://www.ktnv.com/news/200000-settlement-approved-in-lvmpd-excessive-force-case (last accessed May 31, 2022).

[5] *See* https://www.lvmpd.com/en-us/InternalOversightConstitutionalPolicing/Documents/Use%20of%20Force%20Statistical%20Analysis%202012-2016%20-%20051117.pdf at p. 14 (last accessed May 31, 2022 ).

Amendments to the United States Constitution.

66.     Defendants violated Plaintiffs' right be free from unreasonable searches and seizures by seizing their persons with no legitimate justification. Plaintiffs were in their vehicle attempting to leave the area where protestors had convened when officers swarmed their car and forcibly removed them without providing any explanation. They had never been part of the protest and were only in the area because law enforcement's traffic closures forced them there.

67.     The fact that Defendant Officers failed to inform Plaintiffs of the reason for the seizure until after they had been assaulted and detained raises the inference that the purported charge was pretextual and Officers were either retaliating against Plaintiffs for exercising their First Amendment right to play a song with a message perceived to be critical of police, and/or targeting them in other ways offensive to the Fourth and Fourteen Amendments.

68.     Plaintiffs right to be free from unreasonable searches and seizures was, or should have been, known to Defendants.

69.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendant Officers.

70.     It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

### SECOND CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES)
#### (AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

71.     Plaintiffs repeat and re-allege Paragraphs 1 through 70 as though fully set forth herein.

72.     On information and belief, Defendant Metro created or condoned a policy that allowed officers to arrest Black individuals and individuals they believed to be supporters of the Black Lives Matter movement without probable cause during the height of the 2020 protests.

73.     The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding the lawful bases for seizures amounts to deliberate indifference to the safety and constitutional rights of individuals such as Plaintiffs.

74.     Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies regarding the lawful bases for performing traffic stops.

75.     As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to be free from unlawful searches and seizures, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary and compensatory damages from Defendants.

76.     It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

77.     Further, Plaintiffs are entitled to declaratory and injunctive relief.

**THIRD CAUSE OF ACTION**
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RIGHT TO BE FREE FROM EXCESSIVE FORCE)
(AGAINST DEFENDANTS OFFICER QUINTERO, OFFICER RAJ, AND OFFICERS DOE I - IV)

78.     Plaintiffs repeat and re-allege Paragraphs 1 through 77 as though fully set forth herein.

79.     The Fourth Amendment to the United States Constitution, as applied to state governments through the Fourteenth Amendment, protects civilians from unreasonable searches and seizures.

80.     Courts have enumerated a set of factors to assess whether a state actor's use of force is reasonable. These factors include "the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024–25 (9th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989).)

81.     Defendants, acting under color of law, violated Plaintiffs' right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

82.     Defendants violated Mr. Roger's right to be free from excessive force as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution by forcefully removing him from his stationary vehicle, grabbing his neck and forcing him against a car hood, and zip-tying his hands. Further, Defendant Officers repeatedly threatened to tase Mr. Rogers while he was pressed against the hood of the vehicle with his hands behind his back.

83.     Defendants violated Ms. Wright's right to be free from excessive force as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution by forcefully removing her from the vehicle while her seatbelt was still on—to the extent that her shoes were ripped off her feet while being yanked out of the car.

84.     Defendants' use of force was disproportionate and excessive based on the totality of the circumstances, given that Plaintiffs did not pose any threat to officers or others.

85.     Plaintiffs' right to be free from such excessive force was, or should have been, known to the Defendant Officers.

86.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendant Officers.

87.     It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

### FOURTH CAUSE OF ACTION
#### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (RIGHT TO BE FREE FROM EXCESSIVE FORCE)
#### (AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

88.     Plaintiffs repeat and re-allege Paragraphs 1 through 86 as though fully set forth herein.

89.     On information and belief, Defendant Metro escalated or condoned the escalation of officers' use of force against Black civilians and anyone they believed to be supporters of the Black Lives Matter movement once tensions between protestors and police reached a unilateral point of intolerability.

90.     Defendants Metro and Sheriff Lombardo's failure to provide adequate training and supervision regarding the lawful use of force against individuals during protests—whether or not the subjects are engaged in protesting—constitutes deliberate indifference to the safety and constitutional rights of individuals such as the Plaintiffs.

91.     Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies regarding appropriate uses of force during protests. The pervasive shortcomings of their policies are evidenced by the numerous lawsuits and federal actions that Metro and its officers have been subject to in recent years.

92.     As a direct and proximate result of Defendants' deliberate indifference to their constitutional right to be free from the use of excessive force, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary and compensatory damages from Defendants.

93.     It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest

herein.

94.     Further, Plaintiffs are entitled to declaratory and injunctive relief.

**FIFTH CAUSE OF ACTION**
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(FALSE ARREST)
(AGAINST DEFENDANTS OFFICER QUINTERO, OFFICER RAJ, AND OFFICERS DOE I - IV)

95.     Plaintiffs repeat and re-allege Paragraphs 1 through 94 as though fully set forth herein.

96.     Defendants violated Plaintiffs' right be free from false arrests by arresting Mr. Rogers without probable cause for failure to disperse—even though Plaintiffs were never at the protest and thus never subject to the dispersal orders. Further, Plaintiffs were in their vehicle en route to a destination away from the site of the protest; they were actively dispersing when Mr. Rogers was arrested for failure to disperse.

97.     Plaintiffs' right to be free from arrest in the absence of probable cause was, or should have been, known to Defendants.

98.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendant Officers.

99.     It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

**SIXTH CAUSE OF ACTION**
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(FALSE ARREST)
(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

100.     Plaintiffs repeat and re-allege Paragraphs 1 through 98 as though fully set forth herein.

101.   On information and belief, Defendant Metro created or condoned a policy that allowed officers to arrest Black individuals and individuals they believed to be supporters of the Black Lives Matter movement without probable cause during the height of the 2020 protests.

102.   Defendants Metro and Sheriff Lombardo's failure to provide adequate training and supervision regarding the lawful bases for arrests constitutes deliberate indifference to the safety and constitutional rights of individuals such as the Plaintiffs.

103.   Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to officer interactions with citizens including lawful bases for performing arrests.

104.   As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to be free from false arrest, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary and compensatory damages from Defendants.

105.   Because it has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter, they are entitled to attorneys' fees, costs, and interest herein.

106.   Further, Plaintiffs are entitled to declaratory and injunctive relief.

**SEVENTH CAUSE OF ACTION**
VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(EQUAL PROTECTION)
(AGAINST DEFENDANTS OFFICER QUINTERO, OFFICER RAJ, AND DOE OFFICERS I - IV)

107.   Plaintiffs repeat and re-allege Paragraphs 1 through 106 as though fully set forth herein.

108.   Defendants violated Plaintiffs' right to equal protection of the law by subjecting them to unlawful seizure, excessive force, and false arrest based on their race.

109.   Defendants were able to identify Mr. Rogers' race through his car windows.

110.   Plaintiffs' right to equal protection of the law was, or should have been,

known to Defendant.

111.    As a direct and proximate result of Defendant's violations of the Fourteenth Amendments, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendant Officers.

112.    It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

**EIGHTH CAUSE OF ACTION**
VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(EQUAL PROTECTION)
(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

113.    Plaintiffs repeat and re-allege Paragraphs 1 through 112 as though fully set forth herein.

114.    On information and belief, Defendant Metro created or condoned a policy that allowed officers to arrest Black individuals based on their race during the 2020 Black Lives Matter protests in Las Vegas. This policy or practice resulted in the disparate mistreatment of Black individuals and subsequent violations of their constitutional rights, based primarily on their race.

115.    The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding equal application of the law to all citizens regardless of race constitutes indifference to the constitutional rights of individuals such as Plaintiffs.

116.    Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to Metro officer interactions with citizens and ensuring that officers uniformly enforce laws and do not discriminate against citizens based on their race.

117.    As a direct and proximate result of Defendants' deliberate indifference to

his constitutional right to be free from false arrest, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary and compensatory damages from Defendants.

118. Because it has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter, they are entitled to attorneys' fees, costs, and interest herein.

119. Further, Plaintiffs are entitled to declaratory and injunctive relief.

**NINTH CAUSE OF ACTION**
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RETALIATION FOR PROTECTED SPEECH)
(AGAINST DEFENDANT OFFICERS QUINTERO, RAJ, AND OFFICERS DOE I - IV)

120. Plaintiffs repeat and re-allege Paragraphs 1 through 119 as though fully set forth herein.

121. Music is a form of expressive conduct protected by the First Amendment. *Ward v. Rock Against Racism*, 109 S. Ct. 2746, 2753 (1989).

122. Plaintiffs were engaged in protected expressive conduct when they played a song perceived to be critical of the police while stuck in the traffic jam on Las Vegas Boulevard.

123. Shortly after Mr. Rogers played the song in question, Defendant Officers stormed Plaintiffs' vehicles, seized, assaulted, and detained them.

124. Other individuals who were also playing music with content-neutral lyrics were not assaulted or detained.

125. Defendants violated Plaintiffs' right to be free from retaliation for engaging in protected speech under the First and Fourteenth Amendments of the U.S. Constitution by detaining and arresting Mr. Rogers for engaging in protected speech.

126. Defendant further violated Plaintiffs' right to be free from retaliation for engaging in protected speech by arresting Plaintiff following the stop and seizure which was predicated on nothing but retaliation, absent any probable cause otherwise.

127. But for Defendant's retaliatory animus, Plaintiffs would not have been

seized or arrested for allegedly failing to disperse.

128.   Plaintiffs right to be free from retaliation for engaging in protected speech was, or should have been, known to Defendants.

129.   As a direct and proximate result of Defendant's violations of the Fourteenth Amendments, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendant Officers.

130.   It has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

**TENTH CAUSE OF ACTION**
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RETALIATION FOR PROTECTED SPEECH)
(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

131.   Plaintiffs repeat and re-allege Paragraphs 1 through 130 as though fully set forth herein.

132.   Upon information and belief, Defendant Metro established a policy or practice that condoned retaliatory actions and arrests against Black individuals and individuals who the agency believed was a supporter of messages critical of police.

133.   The failure of Defendant Metro and Sheriff Lombardo to provide adequate training and supervision regarding the constitutional prohibition on retaliatory arrest and citation for engaging in protected speech amounts to deliberate indifference to the safety and constitutional rights of individuals such as Plaintiffs.

134.   Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies with respect to Metro officer interactions with citizens and ensuring that officers do not perform retaliatory arrests for engaging in protected speech.

135.   As a direct and proximate result of Defendants' deliberate indifference to

his constitutional right to be free of retaliation for his speech, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary and compensatory damages from Defendants.

136.    Because it has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter, they are entitled to attorneys' fees, costs, and interest herein.

137.    Further, Plaintiffs are entitled to declaratory and injunctive relief.

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF THE CONSTITUTION OF THE STATE OF NEVADA
### (EXCESSIVE FORCE)
### (AGAINST DEFENDANT OFFICERS QUINTERO, RAJ, AND OFFICERS DOE I – IV)

138.    Plaintiff repeats and realleges Paragraphs 1 through 137 as though fully set forth herein.

139.    Article 1, Section 18 of the Nevada Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized."

140.    Defendants violated Plaintiffs' right to be free from excessive force when they forcefully yanked Plaintiffs and their son from their vehicle while they were still wearing seatbelts. Plaintiffs did not pose any threat to officers, as made clear by the fact that they were in their locked car leaving the area.

141.    Defendants further violated Mr. Rogers' right to be free from excessive force when they shoved his head into the car hood, threatened to tase him, and ziptied his hands.

142.    As a direct and proximate result of Defendant's violations of the Fourteenth Amendments, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendant Officers.

143.    It has been necessary for Plaintiffs to retain the services of attorneys to

pursue this matter and Plaintiffs are entitled to attorneys' fees, costs, and prejudgment interest herein.

## TWELFTH CAUSE OF ACTION
### VIOLATION OF THE CONSTITUTION OF THE STATE OF NEVADA
### (EXCESSIVE FORCE)
### (AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO)

144.    Plaintiff repeats and realleges Paragraphs 1 through 143 as though fully set forth herein.

145.    Defendants violated Plaintiffs' right to be free from excessive force when they forcefully yanked Plaintiffs and their son from their vehicle while they were still wearing seatbelts. Plaintiffs did not pose any threat to officers, as made clear by the fact that they were in their locked car leaving the area.

146.    On information and belief, Defendant Metro escalated or condoned the escalation of officers' use of force against Black civilians and anyone they believed to be supporters of the Black Lives Matter movement during the 2020 protests.

147.    Defendants Metro and Sheriff Lombardo's failure to provide adequate training and supervision regarding the lawful use of force against individuals during protests constitutes deliberate indifference to the safety and constitutional rights of individuals such as the Plaintiffs.

148.    Defendants Metro and Sheriff Lombardo are liable for their employees' actions because at all relevant times they were responsible for making and enforcing constitutional policies regarding appropriate uses of force during protests.

149.    As a direct and proximate result of Defendants' deliberate indifference to his constitutional right to be free from false arrest, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof. Accordingly, Plaintiffs are entitled to monetary and compensatory damages from Defendants.

150.    Because it has been necessary for Plaintiffs to retain the services of attorneys to pursue this matter, they are entitled to attorneys' fees, costs, and interest herein.

151.    Further, Plaintiffs are entitled to declaratory and injunctive relief.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray as follows:

a.       A declaration that Defendant Metro's and Defendant Sheriff Lombardo's failures to make or enforce policies and practices with respect to preventing the wrongful seizure, detention, and arrest of motorists violated Plaintiffs' constitutional rights;

b.       Compensatory and punitive damages to be determined at trial;

c.       An award of attorney's fees and expenses under 42 U.S.C. § 1988(b);

d.       For a jury trial on all issues; and,

e.       Any further relief the Court deems appropriate.

RESPECTFULLY SUBMITTED this 31st day of May, 2022.

/s/ Margaret A. McLetchie
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
DAYVID J. FIGLER, Nevada Bar No. 4264
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, Nevada 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
Attorney for Plaintiffs