**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Jackie V. Nichols, Esq.
Nevada Bar No. 14246
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
jnichols@maclaw.com
   Attorneys for Defendants Las Vegas Metropolitan
   Police Department, Sheriff Joseph Lombardo, Sgt.
   Alfredo Quintero, and Officer Praveen Raj

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL ROGERS, an individual; NIKITA WRIGHT, an individual,<br><br>                Plaintiffs,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; JOSEPH LOMBARDO, in his official capacity as Sheriff; ALFREDO QUINTERO, individually; PRAVEEN RAJ, individually; DOE OFFICERS I - IV, individually,<br><br>                Defendants. | Case Number:<br>2:22-cv-00867-CDS-DJA<br><br>**LVMPD DEFENDANTS' MOTION FOR PARTIAL DISMISSAL** |

Defendants, the Las Vegas Metropolitan Police Department (the "Department" or "LVMPD"), Sheriff Joseph Lombardo ("Lombardo"), Sgt. Alfredo Quintero ("Quintero"), and Officer Praveen Raj ("Raj"), collectively ("LVMPD Defendants"), by and through their attorneys of record, the law firm of Marquis Aurbach, hereby submit their Motion for Partial Dismissal. This Motion is made and based upon all papers, pleadings, and records on file herein, the attached Memorandum of Points and Authorities, and any oral argument allowed at a hearing on this matter.

. . .

. . .

. . .

MAC:14687-418 4740196_1 6/22/2022 3:39 PM

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

This case is a civil rights lawsuit stemming from a vehicle stop and subsequent detainment of Plaintiff Wright and arrest of Plaintiff Rogers. First, Sheriff Lombardo must be dismissed from the case in his official capacity as the claims against him in his official capacity are duplicative of the *Monell* claims. Furthermore, no state action can be maintained against Sheriff Lombardo unless he personally participated in such conduct and there no allegations in the Complaint to support such a claim.

Plaintiffs also failed to sufficiently plead allegations in support of their Equal Protection claim under the Fourteenth Amendment and their First Amendment retaliation claim. Similarly, Plaintiffs' *Monell* claims fail as a matter of law because the allegations asserted in no way relate to the alleged constitutional violations. Additionally, Plaintiffs cannot maintain a private cause of action under Nevada's Constitution.

Based on the foregoing, LVMPD Defendants ask that the Court dismiss Sheriff Lombardo, the *Monell* claims, the Equal Protection claim, the First Amendment Retaliation claim, and the state law claims.

### II. STATEMENT OF FACTS

Plaintiffs allege they were unlawfully seized on May 31, 2021 on the Las Vegas Strip upon playing "a song that could be perceived as critical of police." ECF No. 1, generally. Plaintiff Wright asserts that she was unlawfully detained from her vehicle. ECF No. 1 at ¶¶ 28-34. Plaintiff Rogers contends that he was unlawfully detained and arrested for failure to disperse. Id. at ¶¶ 35-53. Whiles Plaintiffs have named two specific officers, Plaintiffs do not assert which of the named officers or DOE officers performed specific acts. See ECF No. 1, generally.

Plaintiffs further assert that LVMPD maintains a history of constitutional violations:

*Metro's History of Constitutional Violations*

> 58. On information and belief, Metro has a history of deliberate indifference toward the rights of those in Las Vegas to be free of unreasonable searches, seizures and false arrests performed without probable cause; to be free from

the use of excessive force; to be free from retaliation for engaging in protected speech; and, to be free from discriminatory application of the laws based on race.

59. In 2011, Metro entered into cooperative agreement number 2011-CK-WX-K002, pursuant to which the United States Department of Justice Office of Community Oriented Policing Services commissioned a report which suggested Metro make 80 different recommendations or reforms, many of which were related to use of force.'

60. In 2012, Metro settled a case for $100,000 in which a Metro officer who had previously been involved in two officer-involved shootings—beat and arrested a videographer for refusing to obey his unlawful demands to stop recording police in public.

61. In 2016, Metro settled a case for $200,000.00 in which a Metro officer used excessive force in detaining an unarmed woman whom he suspected—but had no probable cause to believe—was engaged in prostitution.

62. According to Metro's Office of Internal Oversight Use of Force Statistical Analysis 2012-2016, in 2016, black subjects were overrepresented and white subjects were underrepresented in officer involved shootings in a way that was "not consistent with the racial demographics of Clark County, Nevada."

ECF No. 1.

With respect to Sheriff Lombardo, Plaintiffs' boilerplate allegations include:

9. Defendant JOSEPH LOMBARDO ("Sheriff Lombardo") is the Sheriff of Metro, and was the Sheriff of Metro at all relevant times herein. Sheriff Lombardo and all Metro police officers are vested with the authority to enforce both Nevada statutory law and the City of Las Vegas Municipal Code. Sheriff Lombardo has final policymaking authority for Metro internal policies and is vested with supervisory authority over all Metro officers.

10. On information and belief, Defendant Sheriff Lombardo has failed to implement policies safeguarding motorists' constitutional rights and has failed to adequately train his officers to avoid excessive force and protect motorists from being subjected to brutalization when attempting to comply with officers' commands.

11. On information and belief, Defendant Sheriff Lombardo has failed to implement policies that prevent officers from disproportionately targeting and arresting Black individuals in retaliation for exercising their First Amendment rights.

ECF No. 1.

As it relates to this instant motion, Plaintiff has alleged the following claims:

- Second Cause of Action: *Monell* claim against LVMPD and Sheriff Lombardo for unreasonable arrests of black individuals in violation of the Fourth Amendment;

MAC:14687-418 4740196_1 6/22/2022 3:39 PM

- Fourth Cause of Action: *Monell* claim against LVMPD and Sheriff Lombardo for excessive force against Black civilians;

- Fifth Cause of Action: False Arrest against individual officers;

- Sixth Cause of Action: *Monell* claim against LVMPD and Sheriff Lombardo for False Arrest;

- Seventh Cause of Action: violation of right to Equal Protection of the law based on race against individual officers;

- Eighth Cause of Action: *Monell* claim against LVMPD and Sheriff Lombardo for violation of Equal Protection;

- Ninth Cause of Action: First Amendment retaliation against individual officers;

- Tenth Cause of Action: *Monell* claim against LVMPD and Sheriff Lombardo for First Amendment retaliation;

- Eleventh Cause of Action: Excessive Force under Nevada Constitution against individual officers

- Twelfth Cause of Action: Excessive Force under Nevada Constitution against Sheriff Lombardo and LVMPD

ECF No. 1.

## III. **LEGAL ARGUMENT**

### A. **LEGAL STANDARD.**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail on the merits, but rather, whether the claimant asserted sufficient factual allegations to support his claims such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *See*, *e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

"To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1 the court to draw the reasonable inference that the defendant is liable for the misconduct
2 alleged."). Nevertheless, even though a complaint does not need detailed factual allegations,
3 the facts stated "must be enough to raise a right to relief above the speculative level . . . on
4 the assumption that all the allegations in the complaint are true (even if doubtful in fact)."
5 *Twombly*, 550 U.S. at 555. Thus, "[a] pleading that offers 'labels and conclusions' or 'a
6 formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.
7 Further, a complaint will not suffice if the plaintiff fails to assert valid causes of
8 action. *Halet v. Wend Inv Co.*, 672 F.2d 1305, 1306 (9th Cir. 1982). Likewise, courts may
9 also dismiss a claim if "the running of the statute [of limitations] is apparent on the face of
10 the complaint." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir.
11 2011) (internal quotation marks and brackets omitted).

**B.      SHERIFF LOMBARDO MUST BE DISMISS FROM THE LAWSUIT.**

It appears Sheriff Lombardo has been sued in his official capacity. (ECF No. 1 at Caption). Because it is unclear, Sheriff Lombardo addresses both individual and official capacity claims. Additionally, the state law claim cannot be maintained against the Sheriff.

**1.      Individual Capacity.**

As a general rule, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . ." *Lynch v. Ramsey*, 2010 WL 4400027 (E.D. Pa. Nov. 4, 2010). Under §1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A supervisor may only be held liable if there exists either: (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violation, or knew of the violation and failed to act to prevent them. There is no respondeat superior liability under Section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Ninth Circuit defined the contours of individual liability when it stated that a plaintiff cannot

hold an officer liable because of his membership in a group without showing individual participation in the unlawful conduct. *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). In other words, group liability requires that a plaintiff first establish the "integral participation" of the officers in the alleged constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Further, with respect to plaintiffs' state law claims, "[n]o action may be brought against . . . [a] sheriff . . . which is based solely upon any act or omission of an officer of the department. *See* NRS 41.0335(1)(a)-(b).

Here, there are no allegations that even suggest Sheriff Lombardo participated in, directed, or knew of the subject event. In fact, the only factual reference to Sheriff Lombardo is the fact he is being sued. As such, Sheriff Lombardo requests Plaintiffs be prohibited from pursuing an individual capacity claim against him.

### 2. **Official Capacity.**

According to well established federal law, "a suit against a governmental official in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). The real party in such suits is the entity, and it is the entity that will be responsible for any damages. *Ward v. City of Sparks*, 2011 WL 587153 at *4 (D. Nev. Jan. 12, 2011). Indeed, the United States Supreme Court has held that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). Where both the public entity and a municipal officer are named in a lawsuit, a court may dismiss the individual named in his official capacity as a redundant defendant. *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir. 1986).

Thus, Plaintiffs' official capacity claims against Sheriff Lombardo are duplicative of the claims against LVMPD because a suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself. Sheriff Lombardo must be dismissed.

### 3. State Law Claims.

Nevada expressly prohibits suits against a Sheriff in an official capacity. NRS 41.0335 prohibits suits against a sheriff for the acts or omissions of his deputies. Thus, by Nevada law, Plaintiff cannot assert a claim against Sheriff Lombardo unless it is based on his own personal participation in the alleged tort. Here, there are no facts alleged in the Complaint that Sheriff Lombardo participated in the alleged excessive force. Accordingly, Sheriff Lombardo cannot be held liable for this claim.

### C. STATE LAW CLAIMS FOR EXCESSIVE FORCE CANNOT BE MAINTAINED.

Plaintiffs attempt to pursue a claim for excessive force under the Nevada Constitution. However, there is no private right of action under the Nevada Constitution for excessive force. Article 1, Section 18 of the Nevada Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized.

Unlike the federal legislature, by way of 42 U.S.C. § 1983, the Nevada legislature has never enacted legislation creating a private cause of action under Article 1 § 18 of the Nevada Constitution. By way of example, Article XV, § 16(B) specifically allows for a private right of action. Further, the Nevada Supreme Court has not recognized a common law right of action under the Nevada Constitution's mandate of due process. Had the Nevada Legislature of the Citizens of the State of Nevada intended a private cause of action under Article I, § 18, they would have included that right within the article, as they did in Article XV, § 16(B). Accordingly, this claim must be dismissed.

### D. FEDERAL CLAIMS.

#### 1. Plaintiffs Failed to Sufficiently Plead an Equal Protection Claim.

A plaintiff alleging denial of equal protection under Section 1983 based on race must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d

MAC:14687-418 4740196_1 6/22/2022 3:39 PM

1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081–82 (9th Cir. 2003). Proof of a discriminatory intent or purpose is required to show an equal protection violation based on race. *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 193–94 (2003).

Although at the pleading stage a plaintiff need only "allege facts that are at least susceptible of an inference of discriminatory intent," *Byrd v. Maricopa County Sheriff's Department*, 565 F.3d 1205 (9th Cir. 2009), nothing in the allegations pled in the complaint are susceptible to the inference that the individual officers had a racially discriminatory intent towards Plaintiffs. Accordingly, this claim must be dismissed.

### 2. Plaintiffs Failed to Sufficiently Plead a First Amendment Retaliation Claim.

A successful First Amendment Retaliation claim must allege that the "(1) [Plaintiffs] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) ("Arizona Students") (citing *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)). The defendant must cause the injury through retaliation; "a plaintiff must show that the defendant's retaliatory animus was 'a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.' " *Capp v. Cty. of San Diego*, 940 F.3d 1046 (9th Cir. 2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). "At the pleading stage, the complaint must simply allege plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct[,] and motive may be shown with direct or circumstantial evidence." *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (internal quotations omitted). There is no requirement for a showing of actual suppression of

protected speech, just that the defendant's intentional hinderance of plaintiff's First Amendment activity resulted in some injury. *Arizona Students*, 824 F.3d at 867.

Plaintiffs assert that they were engaged in protected activity when they played a song perceived to be critical of the police while caught in a traffic jam.  There are no facts to support that the alleged playing of music was the basis for the extraction out of the vehicle.  To be sure, there are no facts that plausibly suggest that officers heard the song prior to making a decision to approach Plaintiffs' vehicle.  Furthermore, there are no facts to support the conclusory allegation that other individuals who were also playing music with content-neutral lyrics were not assaulted or detained.  The facts alleged actually contradict such assertions.  Plaintiffs contend that while they were playing the song in question (at no particular volume, and apparently with the windows rolled up), a "cacophony of horns and sirens" were also amidst the noise on the streets.  It can be inferred that due to the cacophony of horns and sirens, officers were not able to hear the specific song played by Plaintiffs, especially considered there are no facts that would allow the trier of fact to ascertain the volume of the alleged song.  Thus, as alleged in the Complaint, there can be no inference that the officers acted in a retaliatory manner given that the facts do not allow a reasonable person to infer that the officers were aware of the song being played or that the officers perceived the song as being critical of their actions.  For these reasons, the First Amendment retaliation claim fails as a matter of law.

### 3. Plaintiffs' *Monell* Claims Fail as a Matter of Law.

In *Monell*, the Court held that when a municipal policy of some nature is the cause of the unconstitutional actions taken by municipal employees, the municipality itself will be liable.  *See Monell v. Dep't of Social Services,* 436 U.S. 658 (1978).  Liability only exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom" even though such a "custom" has not received formal approval.  *Monell*, 436 U.S. at 690-91.  The Court

defined "custom" as "persistent and widespread discriminatory practices by state officials." *Id.* at 691 (citing *Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 167-68 (1970)).

The doctrine of respondeat superior does not apply to 42 U.S.C. §1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691). In other words, municipal liability is not established merely by showing that a municipal employee committed a constitutional tort while within the scope of employment. *Id.* at 478-79. For liability to attach to a municipality, a plaintiff must establish that the wrongful act complained of was somehow caused by the municipality. *Monell*, 436 U.S. at 691-95. Such liability can be imposed only for injuries inflicted pursuant to a governmental "policy or custom." *Monell*, 436 U.S. at 694. In addition, there must be shown to be an affirmative link between the policy or custom and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The alleged policy or custom must be the "moving force" for the constitutional violation in order to establish liability under §1983. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(citing *Monell*, 436 U.S. at 694). Causation must be specific to the violation alleged, meaning that merely proving an unconstitutional policy, practice, or custom however loathsome, will not establish liability unless the specific injury alleged relates to the specific unconstitutional policy proved. *Board of County Comm'rs of Bryan City, Oklahoma vs. Brown*, 520 U.S. 397, 404 (1997). Once each of these elements are met, a plaintiff must further prove that the unconstitutional policy that caused her injury was the result of something more than mere negligence on the part of the municipality, and was instead the result of "deliberate indifference" - a state of mind that requires a heightened level of culpability, even more than mere "indifference." *Id.* at 411. In fact, the *Monell* standard for municipal liability has been interpreted as more restrictive than "common law restrict[ions] [on] private employers' liability for punitive damages." *See* David Jacks Achtenburg, Taking History Seriously: Municipal Liability Under 42 U.S.C. § 1983 and the Debate Over Respondeat Superior, 73 Fordham L. Rev. 2183, 2191 (2005). Proof of a single incident is insufficient to establish a custom or policy. *Tuttle*, 471 U.S. at 821.

To properly plead a *Monell* claim against LVMPD, plaintiff must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or custom amounted to deliberate indifference, i.e., show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Harvey v. City of South Lake Tahoe*, 2012 WL 1232420 (E.D. Cal. April 12, 2012). Post *Iqbal*, a plaintiff cannot rely on conclusory factual allegations. Rather, a plaintiff must allege facts which, if true, show that the defendant actually had a constitutionally impermissible policy, practice, or custom. *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). An actionable policy or custom is demonstrated by: (1) an "express policy that, when enforced, causes a constitutional deprivation." *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law;" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or (3) constitutional injury caused by a person with "final policymaking authority." *Id.* at 123.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir.1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

The only factual descriptions of policies, procedures, and practices identified in the Complaint include:

> 58. On information and belief, Metro has a history of deliberate indifference toward the rights of those in Las Vegas to be free of unreasonable searches, seizures and false arrests performed without probable cause; to be free from the use of excessive force; to be free from retaliation for engaging in protected speech; and, to be free from discriminatory application of the laws based on race.
>
> 59. In 2011, Metro entered into cooperative agreement number 2011-CK-WX-K002, pursuant to which the United States Department of Justice Office

MAC:14687-418 4740196_1 6/22/2022 3:39 PM

of Community Oriented Policing Services commissioned a report which suggested Metro make 80 different recommendations or reforms, many of which were related to use of force.'

60. In 2012, Metro settled a case for $100,000 in which a Metro officer who had previously been involved in two officer-involved shootings—beat and arrested a videographer for refusing to obey his unlawful demands to stop recording police in public.

61. In 2016, Metro settled a case for $200,000.00 in which a Metro officer used excessive force in detaining an unarmed woman whom he suspected—but had no probable cause to believe—was engaged in prostitution.

62. According to Metro's Office of Internal Oversight Use of Force Statistical Analysis 2012-2016, in 2016, black subjects were overrepresented and white subjects were underrepresented in officer involved shootings in a way that was "not consistent with the racial demographics of Clark County, Nevada."

ECF No. 1.  It is important that the Court take notice of Plaintiffs' allegations.  That is, the gravamen of Plaintiffs complaint pertains to a vehicle stop for failure to disperse, subsequent arrest that he alleges was made without probable cause, excessive force, violation of equal protection, and First Amendment retaliation.  Plaintiffs' excessive force claim does not involve a shooting and is limited to "grabbing his neck and forcing him against a car hood, and zip-tying his hands . . . and threating to tase him."  The policy and practice allegations identified above have nothing to do with the alleged constitutional violations at issue.  For instance, the fact that an officer arrested a videographer—not in a vehicle in the middle of an intersection—for refusing to obey his unlawful demands to stop recording is entirely irrelevant to this case.  Similarly, the allegations regarding a women believed to be engaged in prostitution is far removed from the facts of this case—a vehicle stop for failing to disperse.  In other words, there is nothing that connects those allegations to Plaintiffs' Complaint.  Furthermore, those singled out instances occurred several years ago. Plaintiffs have not established an unconstitutional policy, practice, or custom by LVMPD that resulted in their harm and that such policy, practice, or custom amounted to deliberate indifference.

Courts have routinely dismissed complaints that failed to allege facts and are only made upon conclusory allegations.  The Fifth Circuit dismissed a *Monell* claim finding conclusory the following allegation: "[u]pon information and belief, these [due process] deprivations were effected pursuant to City 'policy, practice and/or custom.'"  *McClure v.*

MAC:14687-418 4740196_1 6/22/2022 3:39 PM

*Biesenback*, 2009 WL 4666485, *3 (5th Cir. 2009).  Similarly, in *McCauley v. City of Chicago*, the Seventh Circuit dismissed a *Monell* claim that alleged the following:

> [The City], through its agents, employees and/or servants, acting under color of law, at the level of official policy, practice, and custom, with deliberate, callous, and conscious indifference to McCauley's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint, [the City] had interrelated de facto policies, practices, and customs.

671 F.3d 611, 617 (7th Cir. 2011).

The Seventh Circuit found that "[t]hese are the legal elements of the various claims McCauley has asserted; they are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*."  Id. at 618.

In short, bare allegations of the existence of an official policy or custom are insufficient to withstand a motion to dismiss, and the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the 'municipality] to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, plaintiff has not identified any specific policy or practice that plaintiff relies upon as plaintiff only uses conclusory statements or examples of alleged conduct that in no way or fashion resulted in his harm.  First, there is no identification of a policy, that when enforced, caused the alleged constitutional violations.  *See Baxter*, 26 F.3d at 735.  Second, there are no factual allegations of a widespread practice within LVMPD of officers engaging in vehicle stops for failing to disperse that resulted in a seizure without probable cause and excessive force.  *See Praprotnik*, 485 U.S. at 127.  Plaintiff only relies on conclusory statements that lack any factual support.  Such pleading is insufficient as it does not meet the United States Supreme Court standard that plaintiff must allege facts.  Moreover, in light of the fact that Plaintiffs failed to plausibly allege an Equal Protection claim and First Amendment Retaliation claim, they cannot maintain a *Monell* claim against LVMPD without such constitutional violations.  Because Plaintiffs failed to established how these alleged policies, practices, and customs resulted in their alleged constitutional violation

MAC:14687-418 4740196_1 6/22/2022 3:39 PM

regarding unlawful seizure, false arrest, excessive force, equal protection, and First Amendment retaliation, their *Monell* claims cannot move forward and should be dismissed.

IV. **CONCLUSION**

Based on the foregoing, LVMPD Defendants respectfully request the Court grants their Motion for Partial Dismissal.

Dated this 22nd day of June, 2022.

MARQUIS AURBACH

By: /s/ Jackie V. Nichols
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Jackie V. Nichols, Esq.
Nevada Bar No. 14246
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendants Las Vegas Metropolitan Police Department, Sheriff Joseph Lombardo, Sgt. Alfredo Quintero, and Officer Praveen Raj


# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **LVMPD DEFENDANTS' MOTION FOR PARTIAL DISMISSAL** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 22nd day of June, 2022.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

N/A

/s/ Krista Busch
An employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-418 4740196_1 6/22/2022 3:39 PM