UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Michael Rogers, et al., | Case No. 2:22-cv-00867-CDS-DJA |
| Plaintiffs | **Order Granting in Part and Denying in Part Defendants' Motion to Dismiss** |
| v. | |
| Las Vegas Metropolitan Police Dep't, et al., | [ECF No. 51] |
| Defendants | |

Plaintiffs Michael Rogers and Nikita Wright bring this 42 U.S.C. § 1983 claim against defendants Las Vegas Metropolitan Police Department ("LVMPD"), Governor Joseph Lombardo,[1] Sergeant Alfredo Quintero, and Officer Praveen Raj. Sec. am. compl., ECF No. 42. Defendants filed a motion to dismiss, arguing that I should dismiss all claims brought against then-Sheriff Lombardo, and dismiss plaintiffs' equal protection claim under the Fourteenth Amendment, the First Amendment retaliation claim, and plaintiffs' *Monell* claims against the LVMPD. Mot. to dismiss, ECF No. 51.[2] This motion is fully briefed.[3] For the reasons herein, I grant defendants' motion to dismiss as to the claims against Governor Lombardo. I also grant the motion to dismiss as to plaintiffs' *Monell* claims and equal protection claims, without prejudice and with leave to amend. I deny, however, the motion to dismiss the First Amendment retaliation claims.

---

[1] At the time of the events in this case, Governor Lombardo was Sheriff Lombardo with the Las Vegas Metropolitan Police Department.

[2] Plaintiffs' second amended complaint also alleges violations of the Fourth Amendment and various violations of Nevada law. *See* ECF No. 42.

[3] *See* Pls.' resp. ECF No. 54; Defs.' reply, ECF No. 55.

## I. Background[4]

Plaintiffs allege that on May 31, 2020, they were driving home with their nine-year-old son when they were diverted from their usual route due to road closures related to protests against police brutality and disproportionate mistreatment of persons of color that were taking place on Las Vegas Boulevard. ECF No. 42 at 3. While in a traffic jam related to the road closures, Rogers began to play a song through his car stereo that was "critical of police." *Id.* at 4. Rogers alleges that the song was played at a volume that could be heard outside of the vehicle by the officers in the vicinity. *Id.* at 4. Plaintiffs allege that "either in retaliation [for playing the song] or for other unjustified purposes, including unlawful racial profiling, six officers seized plaintiffs and their son from the car[.]" *Id.* Plaintiffs argue that they posed no conceivable threat while they were in their car and driving away from the protest areas. *Id.* Further, plaintiffs argue that the officers did not make any effort to announce an offense or provide any warning to comply before "aggressively" approaching the car, removing plaintiffs from the car, and handcuffing plaintiffs. *Id.* at 4, 12. Rogers was arrested and detained for fifteen hours for "failure to disperse." *Id.* at 4, 14.

## II. Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[4] Unless otherwise noted, the court only cites to the plaintiffs' second amended complaint (ECF No. 42) to provide context to this action, not to indicate a finding of fact.

2

will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### III. Discussion

#### A. Governor Lombardo is dismissed from the lawsuit.

Plaintiffs sue Governor Lombardo in his individual capacity for actions he took while serving as sheriff. ECF No. 42 at 1. Defendants argue that Governor Lombardo must be dismissed because plaintiffs' second amended complaint (SAC) is devoid of any factual allegations that even suggest Governor Lombardo—as sheriff—participated in, directed, or knew of the subject event involving the plaintiffs. ECF No. 51 at 6. Defendants also argue that there is no respondeat superior liability under § 1983, so for a supervisor to be liable for constitutional violations of his subordinates, the plaintiff must allege that the supervisor participated in or directed the violation or knew of the violation and failed to act to prevent it, which plaintiffs do not allege in the SAC. ECF No. 51 at 6 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 198)). Further, defendants argue that although plaintiffs insist that they are suing Governor Lombardo in his

individual capacity, their complaint alleges that he has final policy-making authority for internal policies and is vested with supervisory authority over all officers. ECF No. 51 at 7. Defendants argue that this claim essentially alleges that Governor Lombardo, as sheriff, was a final policymaker, and plaintiffs' claim thus falls under *Monell*, which cannot be sustained against Governor Lombardo in his individual capacity. *Id.*

In response, plaintiffs argue that they are not required to demonstrate that Governor Lombardo, as sheriff, personally participated, knew of, or directed the specific conduct as alleged in the complaint. ECF No. 54 at 5. Instead, they argue that they must only **allege** such information, which they claim to have done. *Id.* (emphasis in original). Plaintiffs argue that the SAC makes "very specific factual allegations" that Sheriff Lombardo personally participated in the "constitutional violations detailed [in the complaint] . . . was the architect of Metro's response to [Black Lives Matter ("BLM")] protests, including. . .using excessive force against . . . Black individuals . . . improperly citing . . . arresting participants . . . and Black individuals [near] BLM protests; and subjecting Black individuals to disparate treatment based on their race [or the content of their speech]." ECF No. 54 at 5–6 (citing to ECF No. 42 at 20, 24, 27, 30). In reply, defendants reiterate that when suing a government official in their individual capacity, a plaintiff must demonstrate some "real, personal involvement in the alleged constitutional violation." ECF No. 55 at 3 (citing *Kentucky v Graham*, 473 U.S. 159, 167 (1985)). They emphasize that there can be no liability under § 1983 claims based on respondeat superior or vicarious liability. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). They again argue that "there are no factual allegations that even suggest Sheriff Lombardo participated in, directed, or knew of **the subject event** involving Plaintiffs." ECF No. 55 at 3 (emphasis in original). Further, for supervisory officials to incur liability under § 1983 without personal involvement in the particular act of the subordinate, defendants argue that there must be "evidence establishing improper training or supervision of the subordinate officers so as to constitute a breach of the duty owed by the superior." *Id.* at 3–4 (citing *Braud v. Painter*, 730 F. Supp. 1, 7 (M.D. La. 1990).

4

Upon reviewing the complaint, I agree that plaintiffs have not sufficiently demonstrated that Governor Lombardo personally participated in or directed the detainment of the plaintiffs. To adequately plead a local government official's personal liability, plaintiffs must plead facts from which a court could reasonably infer (1) that the official was personally involved in the alleged constitutional deprivation or (2) the existence of a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Gardner v. City of Las Vegas*, 2017 WL 3087276, at *3 (D. Nev. July 20, 2017). Therefore, personal supervisory liability can exist "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)).

Here, plaintiffs do not assert that Governor Lombardo, as sheriff, was personally involved in, or even present at, the alleged incident. Instead, plaintiffs assert that they suffered constitutional violations as a result of a policy of which then-Sheriff Lombardo "was the architect[.]" ECF No. 42 at 20. To support this statement, plaintiffs cite to news articles about then-Sheriff Lombardo where he discusses the arrests of legal observers at protests. ECF No. 42 at 8 n.12, 13. They also cite to other instances where LVMPD has had issues with officers using excessive force or abusing their authority. *Id.* at 3 n.8, 15 n.15, 16, 16 n.17, 18. However, this information merely demonstrates that then-Sheriff Lombardo has commented on instances of high-profile arrests, and that the LVMPD has had issues with officers within its ranks acting inappropriately for various reasons. What the SAC lacks is any factual allegations linking any policies or actions to then-Sheriff Lombardo and any identification of discrete actions taken by then-Sheriff Lombardo that caused plaintiffs' alleged injuries. *See Gardner*, 2017 WL 3087276, at *3; *see also Nichols v. City of Henderson*, 2017 U.S. Dist. LEXIS 139456, at *7 (D. Nev. Aug. 29, 2017) (finding the plaintiff failed to state a claim against the Henderson Police Chief in his individual capacity because the complaint lacked allegations that the Chief was present during the

allegedly unconstitutional seizure.). Consequently, all the claims against Governor Lombardo fail and he is dismissed from this lawsuit.

### B. Plaintiffs have failed to plausibly allege an equal protection claim against the defendant officers.

Plaintiffs allege that defendants violated their right to equal protection guaranteed by the Fourteenth Amendment by subjecting them to "unlawful seizure, excessive force, and false arrest based on their race." ECF No. 42 at 23. Defendants move to dismiss the equal protection claim and argue that "nothing in the allegations pled in the complaint [is] susceptible to the inference that the individual officers had a racially discriminatory intent toward the plaintiffs." ECF No. 51 at 7. In their opposition, plaintiffs state that the complaint explicitly raises the inference of discriminatory intent because (1) plaintiffs allege that after the officers observed that plaintiffs were Black, one officer commanded the group to "[g]et them out . . . go, get 'em, get 'em" and five officers swarmed the vehicle and began ripping plaintiffs and their son from the car; (2) the officers failed to inform the plaintiffs of the reason for their seizure until after they had been assaulted and detained; and (3) plaintiff Rogers was told he was arrested for "failure to disperse" despite being in his vehicle, stuck in traffic, attempting to leave the vicinity. ECF No. 54 at 9–10 (citing ECF No. 42 at 11, 17, 23). In reply, defendants maintain that there are no allegations that demonstrate that any officer specifically acted against the plaintiffs based upon race. ECF No. 55 at 5. Further, defendants argue that the mere allegation that an officer does not specify a particular reason for a detention does not automatically raise an inference that the officers targeted the plaintiffs because of their race, and the assertion that plaintiffs were driving while protests were occurring cannot raise an inference that the action was taken simply because of their race. *Id.* at 5–6.

To state a claim for a violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must "plead facts that plausibly show that a defendant's conduct had a discriminatory effect and was motivated by a discriminatory purpose." *Rosenbaum v. City & Cnty. of*

*San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007). To establish discriminatory effect, the plaintiff must show that members of a protected racial or ethnic class were arrested and subjected to force while "similarly situated" individuals were not. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."). To show discriminatory purpose, a plaintiff must establish that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Rosenbaum*, 484 F.3d at 1153 (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985) (internal citation omitted)). Thus, "[t]o avoid dismissal, a plaintiff must plausibly suggest the existence of a discriminatory purpose." *Recinto v. U.S. Dep't of Veterans Affs.*, 706 F.3d 1171, 1177 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 677). Defendants do not argue the issue of discriminatory effect. However, at the motion to dismiss stage I am required to analyze the sufficiency of the pleadings. For an equal protection claim to survive a motion to dismiss, a plaintiff must allege **both** discriminatory effect and discriminatory purpose. *See Wayte*, 470 U.S. at 608 (emphasis added). A review of the complaint demonstrates that plaintiffs failed to allege that "similarly situated individuals" that were not black were not subject to the officer's conduct. *See Ramirez v. City of San Jose*, 2022 U.S. Dist. LEXIS 53312, at *7 (N.D. Cal. Mar. 24, 2022); *see Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991), superseded by statute on other grounds as recognized by *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005) (an equal-protection claim must assert that a plaintiff was treated differently than other similarly situated persons and that the disparate treatment was intentional.). Therefore, because it does not plead a required element, plaintiffs' equal protection claim must fail. However, because I find that amendment would not be futile, I dismiss plaintiffs' equal protection claim without prejudice and with leave to amend.

### C. Plaintiffs have plausibly alleged a First Amendment claim.

Plaintiffs also allege that the defendant officers seized plaintiffs and detained Rogers in retaliation for playing a song with a message "perceived to be critical of the police" in violation of plaintiffs' First Amendment rights. ECF No. 42 at 17. In defendants' motion to dismiss, they argue that the First Amendment claim must be dismissed because the SAC does not state any facts to support that the "alleged playing of music was the basis for the extraction." ECF No. 51 at 8. Defendants also argue that the SAC actually provides facts demonstrating that the officers that took the specific action were not able to hear the specific song played by the plaintiffs, particularly considering that "there are no facts that would allow the trier of fact to ascertain the volume of the alleged song." *Id.* at 8–9. In their response, plaintiffs contend that, at the motion to dismiss stage, they do not have to establish or prove an inference that plaintiffs' protected activity was a "substantial or motivating factor" in defendants' conduct. ECF No. 54 at 11. Instead, plaintiffs must merely plead that the inference exists, which they have done. *Id.* Plaintiffs also reiterate that they have pled facts that would allow the trier of fact to ascertain the volume of the alleged song because in the complaint they state that "the song was 'played at a volume that could be heard outside of Plaintiffs' vehicle by the officers in the vicinity that were directing traffic.'" *Id.* at 12 (citing to ECF No. 42 at 27).

To bring a First Amendment retaliation claim, plaintiffs must allege that (1) they engaged in constitutionally protected activity, (2) the defendants' actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity, and (3) the protected activity was a substantial motivating factor in the defendant's conduct. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Defendants argue only that plaintiffs fail to allege the third element—that the protected activity was a substantial motivating factor in the defendants' conduct. Plaintiffs allege that they played a song critical of the police that was loud enough to be heard outside the vehicle, and then "shortly after" the officers descended upon the plaintiffs' car. ECF No. 42 at 4. Taking the allegations as true, I find that this is sufficient to

adequately plead a claim of First Amendment retaliation. Further, by stating that the alleged injuries occurred "shortly after" plaintiffs' played the song critical of the police, plaintiffs have established the "substantial motivating factor" element through "evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant[s'] purported reasons for [their] conduct are pretextual or false." *Pitts v. Cal. Highway Patrol Officers D. Baumgartner*, 2022 U.S. Dist. LEXIS 161771, at *5–6 (E.D. Cal. Sept. 7, 2022). Therefore, defendants' motion to dismiss is denied as to the First Amendment retaliation claim.

### D.  Plaintiffs have failed to plausibly allege *Monell* liability.

When suing a municipal entity under § 1983, plaintiffs must show that their injury was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694. To establish municipal liability for failing to act to preserve constitutional rights, the Ninth Circuit requires that plaintiffs demonstrate (1) that the plaintiff "possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation.'" *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

Defendants argue that plaintiffs have not properly pled a *Monell* claim against the LVMPD because the SAC does not identify any policy that, when enforced, caused the alleged constitutional violations and, separately, there are no factual allegations of widespread practice within LVMPD of officers engaging in vehicle stops for failure to disperse that have resulted in seizure without probable cause or excessive force. ECF No. 51 at 13. In response, plaintiffs argue that the SAC "identifies specific alleged policies and practices such that '[LVMPD] was aware of and either explicitly or implicitly condoned or created a policy and/or practice of allowing [LVMPD] officers to deliberately violate the constitutional rights of persons engaging in free speech activities in connection with BLM protests.'" ECF No. 54 at 15 (quoting ECF No. 42 at 2). Further, plaintiffs argue that there are numerous places within the complaint where they

have identified specific LVMPD policies that caused their injuries. *Id.* at 16 (citing to ECF No. 42 at 23, 24, 26, 27). In their reply, defendants again reiterate that plaintiffs have not identified any specific policy or practice and only use conclusory statements or examples of alleged conduct that "in no way or fashion resulted in their harm." ECF No. 55 at 8.

Plaintiffs have not plausibly alleged *Monell* liability. Plaintiffs cite to two cases to support their argument that they have properly alleged *Monell* liability: *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313 (S.D.N.Y 2018) and *McGaffigan v. City of Rochester*, 2022 U.S. Dist. LEXIS 127443 (W.D.N.Y. July 19, 2022). However, both complaints in those cases identified specific policies through particularized facts. For example, in *Black Lives Matter v. Town of Clarkston*, the plaintiffs' complaint provided evidence of emails between officers to support their argument that the officers had a custom, policy, or practice of "conducting illegal surveillance of groups and individuals based on race, social and/or political views[.]" 354 F. Supp. 3d at 324. They also provided an intelligence report as evidence of the illegal surveillance. *Id.* at 325–26. Similarly, in *McGaffigan*, the complaint includes allegations involving not just the police department, but a specific section of the police department: the Mobile Field Force. 2022 U.S. Dist. LEXIS 127443, at *10. The *McGaffigan* complaint also provided specific details about the excessive force, stating that the protestors were subject to "extreme violence" through use of military tactics and chemical weapons to quash protests. *Id.*

In comparison, plaintiffs' SAC is devoid of anything demonstrating a "specific policy." Plaintiffs merely allege that the police have a custom, practice, or policy "that allowed officers to arrest Black individuals based on their race during the 2020 Black Lives Matter protests in Las Vegas," and that LVMPD had a custom, practice, or policy "of allowing the use of excessive force against participants at BLM protests and Black individuals in the vicinity of BLM protests," "violating the First Amendment rights of participants at BLM protests or those in the vicinity of BLM protests[,]" and "intentionally treating participants at BLM protests and Black individuals in the vicinity of BLM protests with disproportionate aggression compared to demonstrations

where participants were not supporting a message critical of police[.] ECF No. 42 at 20, 24, 26. Without more, these are merely conclusory allegations that do not plausibly allege the existence of a custom, practice, or policy. *Cf. Adams v. City of Redding*, 2022 U.S. Dist. LEXIS 208077, at *8 (E.D. Cal. Nov. 15, 2022) (finding that plaintiff adequately pled the existence of a policy where the complaint cited to specific policies in the police department's policy manual that were wrongfully ignored by the officers).[5] Because plaintiffs have not adequately pled *Monell* liability, I dismiss the claims against the LVMPD. However, because I do not believe amendment would be futile, I dismiss the *Monell* claims without prejudice.[6]

## IV. Conclusion

IT IS THEREFORE ORDERED defendants' motion to dismiss **[ECF No. 51] is GRANTED in part and DENIED in part, as set forth in this order.** All claims against Joseph Lombardo are **dismissed with prejudice** and plaintiffs' equal protection and *Monell* claims are **dismissed without prejudice**.

Should plaintiffs choose to file an amended complaint curing the deficiencies of their complaint, they must file the third amended complaint, and title it as such, by **February 12, 2025**. Plaintiffs may not bring any new claims or add in any new defendants without leave of court.

Dated: January 29, 2025

_____
Cristina D. Silva
United States District Judge

---

[5] Plaintiffs reference to cases involving individuals who died after interactions with LVMPD officers do not save the complaint as those cases, as detailed in the complaint, all involved different factual scenarios and results. *See* ECF No. 42 at 2.

[6] I am granting leave to amend for both plaintiffs' equal protection claim and *Monell* claims. However, as this will be plaintiffs' third bite of the apple, further amendment will not be permitted. Plaintiffs are also prohibited from bringing any new claims or adding in any new defendants.